# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 99-3054
No. 99-3426

_____

The Baker Group, L.C., et al.,       *
                              *

     Plaintiffs - Appellants,     *

                              *   Appeals from the United States
     v.                          *   District Court for the
                              *   Western District of Missouri.
Burlington Northern and Santa Fe    *
Railway Company,               *

                              *

     Defendant - Appellee.     *

_____

No. 00-2215

_____

In Re: The Baker Group, L.C., et al.,  *
                              *

     Petitioners.            *

_____

Submitted: May 10, 2000

Filed: October 3, 2000

_____

Before BOWMAN, FLOYD R. GIBSON,[1] and LOKEN, Circuit Judges.

_____

<hr>

[1]Complications from an automobile accident have prevented Judge Gibson from reviewing this opinion prior to its being filed.

LOKEN, Circuit Judge.

In 1987, The Baker Group, L.C., and the MTY Profit Sharing Plan and Trust (collectively "the Baker Group") leased over 600 covered grain railcars to the Burlington Northern and Santa Fe Railway Company ("BNSF") for a lease term ending October 31, 1997.[2] Article 8 of the lease governed maintenance and modification of the railcars during the term of the lease. Article 14 governed return of the railcars to the Baker Group at the end of the lease. In March 1996, the Baker Group sued BNSF in a Kansas state court for alleged breaches of Article 8. That lawsuit ended in a judgment on the merits in favor of BNSF after the lease expired. In this case, the Baker Group sued BNSF for breaches of Article 14, alleging that BNSF failed to return the railcars in proper condition when the lease expired. The district court granted BNSF summary judgment, concluding that the Baker Group's Article 14 claims are barred by claim preclusion (res judicata). The Baker Group appeals, challenging this and other rulings. The parties agree that Kansas law governs. Applying that law, we conclude that claim preclusion does not bar breach-of-contract claims that arose after the first action was filed. Accordingly, we reverse in part.

## I. The Claim Preclusion Issue.

"[A] federal court must give to a state-court judgment the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered." Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984). The doctrine of claim preclusion under Kansas law bars a party from relitigating claims that were litigated or could have been litigated in a prior suit. See In re Reed, 693 P.2d 1156, 1160-61 (Kan. 1985). The Kansas law of claim preclusion does not differ significantly from federal law. See Stanfield v. Osborne Indus., Inc., 949 P.2d 602,

---

[2]The lease was initially entered into by the parties' predecessors-in-interest, but that is irrelevant to the issues on appeal.

608, 610-11 (Kan. 1997). Here, the critical issue is whether the Baker Group litigated or could have litigated its Article 14 claims in the prior Kansas lawsuit.

Article 8 of the lease provides that, during the term of the lease, BNSF as lessee must "maintain the cars in good condition and repair," "not alter the physical structure" of the cars without the Baker Group's approval, and indemnify the Baker Group "for all loss, damage and destruction of cars." In the Kansas case, the Baker Group alleged that BNSF breached Article 8 by modifying railcars and scrapping damaged railcars without the Baker Group's prior permission. In this case, the Baker Group alleges that BNSF breached Article 14 of the lease, which provides that, within ten days after expiration, BNSF must return each railcar --

> free from residue, and in the same order and condition as it was delivered by [the Baker Group] to [BNSF], except for and subject to ordinary wear and tear and modifications permitted under this Agreement.

The Baker Group filed its Petition commencing the Kansas case in March 1996. Obviously, no claim for breach of Article 14 could have been asserted at that time, because BNSF was not obligated to return the railcars until the lease expired in October 1997. It is well settled that claim preclusion does not apply to claims that did not arise until *after* the first suit was filed. See Florida Power & Light Co. v. United States, 198 F.3d 1358, 1360-61 (Fed. Cir. 1999), and cases cited. Thus, "[a] judgment in an action for breach of contract does not normally preclude the plaintiff from thereafter maintaining an action for breaches of the same contract that consist of failure to render performance due after commencement of the first action." RESTATEMENT (SECOND) OF JUDGMENTS § 26, cmt. g (1982). The Supreme Court of Kansas applied these principles in Gordon v. Consolidated Sun Ray, Inc., 352 P.2d 951, 953 (Kan. 1960), holding that a separate cause of action for unpaid rent arose each month of a lease, and the lessor "could not recover any deficiency until it had actually occurred."

-3-

The Kansas case was tried on the merits one year after the lease expired. Because the Baker Group's Article 14 claims arose at expiration, BNSF argues they could have been brought in the Kansas case and are therefore precluded in this case. We disagree. Both rule 15(d) of the Federal Rules of Civil Procedure and its Kansas counterpart, KAN. STAT. ANN. § 60-215(d), provide that the trial court *may permit* a plaintiff to supplement its complaint with a cause of action arising after the original complaint. The rule is permissive for the parties and discretionary for the court. Thus, the Baker Group's failure to supplement its already-commenced Kansas lawsuit did not raise a res judicata bar that precludes a second suit based upon BNSF's later conduct. See Maharaj v. Bankamerica Corp., 128 F.3d 94, 97 (2d Cir. 1997).

BNSF next argues that the Article 14 claims are precluded because they were actually litigated in the Kansas lawsuit. This contention requires a close look at the Kansas proceedings. To put the inquiry in clearer focus, we begin by quoting a relevant passage from the RESTATEMENT (SECOND) OF JUDGMENTS § 26, cmt. g:

> In the event of a "material" breach . . . the plaintiff is entitled to treat the contract as at an end and to recover damages for performances not yet due as well as those already due on the theory that there has been a total breach of contract. If the plaintiff does this, a judgment extinguishing the claim under the rules of merger or bar precludes another action by him for further recovery on the contract. On the other hand, although the breach is material, the plaintiff may elect to treat it as being merely a partial breach. If he so elects, he is entitled to maintain an action for damages sustained from breaches up to the time of the institution of the action, and the judgment does not preclude a further action by him for a breach occurring after that date.

Immediately after commencing the Kansas lawsuit, the Baker Group moved for a temporary injunction declaring the lease in default and ordering BNSF to return the railcars "to contract shops for inspection and repairs under Article 14." This remedy is consistent with a claim of material breach, and had the Kansas court granted that

-4-

injunctive relief, the lease would have been effectively terminated, and claims for "performances not yet due" -- to use the above-quoted Restatement terminology -- would have been extinguished by the final judgment in the Kansas action. But the Kansas court denied a temporary injunction, finding no threat of irreparable injury primarily because BNSF's continuing lease payments more than covered the Baker Group's monthly debt service. Thereafter, BNSF tried to force Article 14 damage issues into the Kansas case. However, ignoring BNSF's threat to invoke claim preclusion in any later action, the Baker Group refused to amend its Kansas petition to add Article 14 claims. Ultimately, at the Kansas trial, the court excluded evidence relating to return of the railcars because those issues belonged in this Missouri lawsuit, which by that time had been commenced.

The above-quoted Restatement commentary does not address this situation -- although the Baker Group *attempted* to declare a material breach and prematurely terminate the contract, the Kansas court rejected that theory, forcing the Baker Group to litigate its Article 8 claims as partial breaches. In these circumstances, what is controlling for claim preclusion purposes, what the Baker Group tried to litigate in the Kansas case, or what the Kansas court allowed it to litigate? The question would be more clearly presented had the Baker Group brought a motion to add Article 14 damage claims on the eve of the Kansas trial, and the trial judge denied that motion for discretionary, case-management reasons. But whether in that situation, or in this more unusual procedural posture, we think Kansas law is clear -- "a judgment is not res judicata as to any matters which a court expressly refused to determine, and which it reserved for future consideration, *or which it directed to be litigated in another forum or in another action.*" Jackson Trak Group, Inc. v. Mid States Port Auth., 751 P.2d 122, 128 (Kan. 1988) (emphasis added).

Therefore, we conclude the Baker Group's later-accruing Article 14 contract claims are not barred. The reason is not, as the Baker Group argues, that injunction suits do not preclude later contract damage actions. An unsuccessful claim that

-5-

includes a prayer for injunctive relief, if fully adjudicated on the merits, will bar a second damage action based upon the same transaction or cause of action. See Burnison v. Fry, 428 P.2d 809, 813 (Kan. 1967). For that reason, the Kansas case *does* preclude Article 8 claims that were litigated, and any pre-existing contract claims that could have been litigated, in that action. But it does not preclude the Baker Group's Article 14 claims because those claims arose subsequently and were never pleaded as an additional cause of action in the Kansas case, and because the Kansas court refused to permit them to be litigated at trial.

## II.  Challenges to Interlocutory Rulings.

On appeal, the Baker Group challenges a number of other district court rulings. Because we are remanding this case for further proceedings on the Article 14 breach-of-contract claims, these rulings are interlocutory in nature. We treat them accordingly.

**A.  An Issue Preclusion Ruling.**   In its final order dismissing the Article 14 claims as claim-precluded, the district court alternatively ruled that fourteen specific issues were resolved in the Kansas lawsuit and may not be relitigated, invoking the doctrine of issue preclusion or collateral estoppel. See generally Jackson Trak, 751 P.2d at 128; Grimmett v. S & W Auto Sales Co., 988 P.2d 755, 759 (Kan. App. 1999). The Baker Group argues that the district court erred on all fourteen issues. At oral argument, BNSF conceded that the combined effect of the fourteen rulings, if upheld, would not completely bar the Baker Group's Article 14 claims. Thus, these issue preclusion rulings are, at this point in the case, interlocutory.

We have little doubt that issue preclusion does affect the Baker Group's Article 14 claims. For example, the Kansas court rejected the Baker Group's Article 8 gate modification claim on the merits. Therefore, the Baker Group is barred from claiming that BNSF breached Article 14 by returning cars with modified gates because Article

14 allows the return of railcars with "modifications permitted under this Agreement."[3] Likewise, the Baker Group is barred by the Kansas judgment from claiming that BNSF breached Article 14 by not returning the damaged cars it scrapped prior to lease expiration. Beyond these rather obvious issues, we cannot anticipate how the issues litigated in the Kansas action may affect the Baker Group's claims in this case. Accordingly, we decline to review the district court's issue preclusion rulings, which are interlocutory and subject to further consideration by that court.

**B. Other Rulings.** The Baker Group appeals a number of the district court's earlier rulings -- the dismissal of negligence, conversion, breach of duty, equity, bailment, and non-Article 14 contract claims, and the court's interpretation of a notice requirement in Article 14. These rulings were interlocutory when made, they are once again interlocutory in nature, and we decline to consider them at this time. We are unwilling to risk interfering with the district court's normal case management prerogatives, including its discretionary power to reconsider interlocutory rulings at any time before final judgment is entered.

### III. The Baker Group's Attack on the District Judge.

The Baker Group has filed a motion to expand relief on appeal and a petition for an extraordinary writ urging us to reassign this case to another district judge on remand. Applying the standards of judicial bias established by the Supreme Court in Liteky v. United States, 510 U.S. 540, 555-56 (1994), we decline to do so.

----

[3]The Baker Group argues that collateral estoppel does not apply because the Kansas court ruled in the alternative that BNSF did not breach Article 8 and that the Baker Group suffered no damage. We disagree. Collateral estoppel applies when a litigated issue was necessary to support the judgment. See Jackson Trak, 751 P.2d at 128. Our review of the Kansas court's decision persuades us that the court considered its thorough analysis of the breach-of-contract issue necessary to support its judgment.

First, the Baker Group complains that the district judge brought pressure to bear on plaintiffs to agree to binding arbitration, and then dismissed their claims on the merits when they insisted upon their day in court. We have not asked the district judge to respond to these allegations because, even if they were true, we are confident the court on remand will abide by the Baker Group's decision not to arbitrate its claims.

Second, the Baker Group complains because the district court's final order criticized counsel for "unprofessional and unethical conduct," and the court sent a copy of its order to the Office of the Chief Disciplinary Counsel for the State of Missouri.[4] The district judge obviously has strong views on this subject, but they are based on his judicial work on the case, not on an "extrajudicial source." Therefore, we decline to exercise our discretion to direct that the case be assigned to a different judge on remand. Of course, that does not preclude the judge from deciding to recuse for any reason, including "deep-seated and unequivocal antagonism that would render fair judgment impossible." Liteky, 510 U.S. at 556.

The judgment of the district court is reversed in part, the court's order awarding costs is vacated, and the case is remanded for proceedings not inconsistent with this opinion. BNSF's motion to dismiss is denied. The Baker Group's Motion To Expand Relief Sought on Appeal and Petition for Writ That This Case Be Reassigned upon Remand are denied.

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[4]The referral was investigated, but no disciplinary charges were filed. The Baker Group's counsel on appeal, Dennis Owens, was not criticized by the district court.

-8-