Macario CAMUS and Kristen Camus, Plaintiffs–Appellants,

v.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, an Illinois Insurance Company, Defendant–Appellee.

No. 05CA1404.

Colorado Court of Appeals, Div. VI.

Dec. 14, 2006.

Ron Robinson, P.C., Ron J. Robinson, Colorado Springs, Colorado, for Plaintiffs–Appellants.

Fisher, Sweetbaum & Levin, P.C., Jon F. Sands, Kimberle E. O'Brien, Denver, Colorado, for Defendant–Appellee.

Opinion by Judge J. JONES.

In this insurance bad faith case, plaintiffs, Macario Camus and Kristen Camus, appeal the summary judgment for defendant, State Farm Mutual Automobile Insurance Company, on the basis of claim preclusion. We reverse and remand for further proceedings.

## I. Facts

The summary judgment record is sparse, consisting primarily of briefs in which the parties argue various inferences from and legal conclusions based on allegations of the complaint, but without presenting evidence as to the underlying facts. In granting summary judgment, the trial court took judicial notice of the file in the underlying personal injury action, but that file is not part of the record on appeal. Nevertheless, the parties do not dispute the following factual allegations of the complaint.

In 1999, plaintiffs were injured in an automobile accident caused by the negligence of another driver. Plaintiffs' insurance policy with State Farm provided underinsured motorist (UIM) coverage of $100,000 per person for bodily injuries caused by a third party. They timely notified State Farm of their claims against the driver and the fact that he might be underinsured.

In 2001, plaintiffs filed a personal injury action against the driver, who had insurance coverage with a $25,000 per person policy limit. Under a policy provision obligating plaintiffs to obtain a judgment against the underinsured driver, State Farm intervened in the personal injury action in November 2002. State Farm's complaint in intervention requested "a jury determination as to all issues including liability, causation, and damages as a result of the automobile accident in which plaintiffs were involved." However, the complaint did not seek to determine State Farm's UIM obligations to plaintiffs or assert any claims against plaintiffs. Plaintiffs did not file any supplemental pleading stating claims against State Farm.

Plaintiffs obtained State Farm's consent and settled with the driver for his policy limits. The personal injury action continued to trial, however, to determine the issues asserted in State Farm's complaint in intervention. The jury returned verdicts in favor of plaintiffs, awarding $135,963 to Macario Camus and $344,895 to Kristen Camus for injuries caused by the driver. The court applied the terms of the policy, and State Farm paid plaintiffs the UIM coverage limits, less its previous payments to them and the settlement with the driver.

Plaintiffs subsequently filed this action against State Farm alleging bad faith breach of insurance contract, negligent or intentional misrepresentation in the sale of insurance policy, outrageous conduct, and bad faith violation of the Colorado Consumer Protection Act. According to plaintiffs, State Farm acted in bad faith by (1) unreasonably failing to investigate their UIM claim, (2) unreasonably refusing to arbitrate this claim, (3) improperly delaying consent to settlement with the driver, (4) obtaining continuances for contrived reasons, (5) unnecessarily forcing them to litigate the extent of their injuries even after it had approved their settlement with the driver, and (6) wrongfully refusing to pay medical and rehabilitation expenses as personal injury protection (PIP) benefits, both during and after the personal injury action.

The record before the trial court when it considered State Farm's motion for summary judgment did not establish when several of State Farm's alleged acts of bad faith occurred, such as: (1) its refusal to arbitrate plaintiffs' claim under the policy; (2) its failure to have a doctor determine the severity of plaintiffs' injuries; and (3) its failure to have plaintiffs' claim evaluated by an independent claims examiner. State Farm did not dispute the allegations concerning its nonpayment of PIP benefits.

Nevertheless, State Farm sought summary judgment, arguing that plaintiffs' claims were barred by the doctrine of claim preclusion because they arose either before or during the personal injury action, and plaintiffs were therefore required to bring them in that action to recover thereon. The trial court

entered summary judgment on that basis, without otherwise analyzing the viability of the claims.

## II. Law

### A. Standard of Review

Summary judgment may be granted if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c). It is a drastic remedy, however, that may not be entered when differing material factual inferences can be drawn from even undisputed evidence. *Compass Ins. Co. v. City of Littleton*, 984 P.2d 606, 613 (Colo.1999); *Sewell v. Public Service Co.*, 832 P.2d 994, 998 (Colo. App.1991). Once the movant shows an absence of genuine factual issues, the burden shifts, and unless the nonmovant shows that a material factual dispute exists, summary judgment is appropriate, so long as the moving party is entitled to judgment as a matter of law. *Smith v. Boyett*, 908 P.2d 508, 516 (Colo.1995).

We review a summary judgment on the basis of claim preclusion de novo. *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo.2005).

### B. Claim Preclusion

■ The doctrine of claim preclusion "bars relitigation not only of all claims actually decided, but of all claims that might have been decided if the claims are tied by the same injury." *Argus, supra,* 109 P.3d at 609. To preclude a second claim there must be "(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions." *Argus, supra,* 109 P.3d at 608; *see also Cruz v. Benine*, 984 P.2d 1173, 1176 (Colo.1999).

In this case, the essential questions are whether the subject matter and the claims for relief in the personal injury action and the bad faith case are identical.

■ In *Argus*, the court explained that the question in this context is whether, in the second action, the plaintiff is seeking a remedy against the defendant " 'with respect to all or any part of the transaction, or series of connected transactions, out of which the [first] action arose.' " *Argus, supra,* 109 P.3d at 609 (quoting Restatement (Second) of Judgments § 24 (1982) ). The focus under this transactional test is not on the specific cause of action asserted or its label. *Gavrilis v. Gavrilis*, 116 P.3d 1272, 1273–74 (Colo. App.2005). Rather, "the 'same claim or cause of action requirement is bounded by the injury for which relief is demanded .…' " *Argus, supra,* 109 P.3d at 609 (quoting *Farmers High Line Canal & Reservoir Co. v. City of Golden*, 975 P.2d 189, 199 (Colo.1999)).

■ Whether a claim arises from the same transaction is determined pragmatically, giving weight to "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." *Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278, 281 (Colo.App. 2006) (quoting Restatement (Second) of Judgments § 24).

## III. Application

Before State Farm intervened in plaintiffs' 2001 lawsuit against the other driver, the subject matter of plaintiffs' suit was the 1999 car accident. Plaintiffs' claim was that the driver was negligent, that his negligence caused plaintiffs' personal injuries, and that the driver was liable to plaintiffs for damages. When State Farm intervened in 2002 it did not assert any claims against plaintiffs. It merely presented evidence and argument related to plaintiffs' damages for the injuries they suffered in the accident. Plaintiffs were not required to and did not submit a responsive pleading. After State Farm intervened, the subject matter and claim for relief did not change, even though State Farm sought to minimize plaintiffs' injuries.

Plaintiffs' suit against State Farm is based upon the insurance policy and State Farm's conduct in processing their claims under that policy. Although the pleadings do not allege

the exact times of State Farm's purported bad faith conduct, it is alleged to have occurred when the policy was issued and after State Farm intervened in the personal injury suit. No bad faith conduct is alleged to have occurred at the time or place of the car accident.

Nevertheless, State Farm argues that because both the personal injury action and the bad faith action share the common element of proving the amount of damages caused by the underinsured driver, they arise from the same transaction within the meaning of *Argus*. We are not persuaded.

State Farm relies principally on *Salazar, supra*, and *Porn v. National Grange Mut. Ins. Co.*, 93 F.3d 31 (1st Cir.1996), as support for its position that plaintiffs were required to bring their bad faith claims in the personal injury action. Both cases, however, are clearly distinguishable.

In *Salazar*, the insurer intervened in the personal injury action "to resolve the common issues of fault and damages that have arisen under [Salazar's] claim for underinsured motorist benefits so that State Farm and [Salazar] can avoid relitigating the same issue in an alternative forum." *Salazar, supra*, 148 P.3d at 279. "In its order granting State Farm's motion [to intervene], the trial court directed Salazar to notify State Farm of its alleged liability." *Salazar, supra*, 148 P.3d at 279. The opinion implies, but does not state, that the trial court ordered the insured to file suit against the insurer, or to amend its complaint to state coverage claims. However, whether the trial court did or could properly order the insured to do so was not an issue in the case. The insured later added coverage claims, thereby expanding the scope of the personal injury case, and at trial, the insured claimed that the insurer's offer of settlement under the UIM policy was too low.

Applying the "related in time, space, origin, or motivation" test, the *Salazar* division first observed that "both the bad faith claims and the UIM benefits claim derived from the same occurrence: State Farm's refusal to compensate Salazar more than $100 under Salazar's [$50,000] UIM policy," after Salazar had made a policy limits settlement with the tortfeasor for $25,000. *Salazar, supra*, 148 P.3d at 281. The division then concluded that the two actions "sought redress for essentially the same wrong" because "Salazar's UIM benefits action sought to determine the amount of damages State Farm should pay under the policy, while her bad faith claims sought redress for State Farm's allegedly unreasonable refusal to pay the benefits." *Salazar, supra*, 148 P.3d at 281.

The division in *Salazar* was presented with the question whether the insured's coverage claim in the first case against the insurer and his bad faith claim in the second case against the insurer were identical. The division was not presented with the question in this case—whether an insured's personal injury claim against the motorist and his bad faith claim against the insurer are identical.

In *Porn*, the policyholder sued the insurance company for coverage under the policy, and then sued the other motorist for negligence. Thereafter, he sued the insurance company for bad faith. As in *Salazar*, the court compared the coverage claim and the bad faith claim and, applying the transactional analysis, concluded that they derived from the same occurrence, the same basic wrong, and similar factual bases—namely, the insurer's conduct in refusing to pay its insured under the policy.

In this case there was no coverage claim asserted in the personal injury action. Hence, *Porn* is distinguishable for the same reason *Salazar* is distinguishable.

In sum, because neither the terms of the policy nor State Farm's refusal to pay the UIM claim was at issue in the personal injury action, we conclude that action is not related "in time, space, origin, or motivation" to this bad faith action. Accordingly, this action is not barred by claim preclusion, and the trial court erred in ruling otherwise.

## IV. Conclusion

We conclude that the trial court erred in entering summary judgment on the basis that this bad faith action was barred by claim preclusion. Having so concluded, we need

not address plaintiffs' other contentions, which are unlikely to arise again on remand.

The judgment is reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge CARPARELLI concurs.

Judge WEBB specially concurs.

Judge WEBB specially concurring.

While agreeing with the result, I write separately because in my view the majority has not adequately addressed the dilemma faced by personal injury claimants who—like plaintiffs, Macario Camus and Kristen Camus—commence a routine personal injury action, when (1) their insurer—like defendant, State Farm Mutual Automobile Insurance Company—intervenes, and (2) before the deadline for amending pleadings has lapsed, they learn of bad faith conduct by the insurer.

Under these circumstances, such claimants must either seek leave to supplement their complaint under C.R.C.P. 15(d) and add bad faith claims against the insurer or risk claim preclusion should they later bring a separate bad faith case. If they do not amend and the insurer successfully invokes the principle that claim preclusion "bars relitigation not only of all claims actually decided, but of all claims that might have been decided if the claims are tied by the same injury," *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 609 (Colo.2005), the bad faith claim will be forever lost. But if they amend, then they must litigate their bad faith claim that may not be fully developed and may complicate trial of the personal injury action.

For the reasons discussed below, I would resolve this issue by adopting the uniform rule among the federal Circuit Courts of Appeal that a plaintiff need not amend to avoid claim preclusion because claim preclusion is limited to claims that had accrued at the time the underlying action was commenced, and thus could have been set forth in the initial complaint.

## I. Background

Here, in entering summary judgment for State Farm, the trial court observed:

> This Court concludes based on a review of the [underlying personal injury] file that the plaintiff was aware of the potential for a bad faith claim and at any number of times during the course of this litigation that began in 2001 and was not finally concluded until January of 2004.[sic] The plaintiff *could have amended* their complaint to include bad faith. This Court is puzzled as to why in July of 2003, when the plaintiff objected to State Farm's second request for continuance and specifically complained about the delay in payment being prejudicial that they did not at that time *ask to amend* their complaint to include bad faith damages.

(Emphasis added.)

Similarly, in *Salazar v. State Farm Mut. Auto. Ins. Co.*, 148 P.3d 278 (Colo.App. 2006), the division pointed to manifestations of bad faith that had arisen during the underlying personal injury action, and on this basis concluded "it was reasonable to expect [the insured] *to amend* her UIM benefits claim to include any bad faith claims." *Salazar, supra*, 148 P.3d at 282 (emphasis added).

Nevertheless, the majority does not address the Camus' purported duty to amend, instead distinguishing *Salazar* on the basis that the plaintiff-insured pleaded a claim for UIM benefits against the insurer after the insurer had intervened, while here the underlying personal injury action did not place in issue either "the terms of the policy" or "State Farm's refusal to pay the UIM claim." Therefore, the majority concludes, the earlier action was not related "in time, space, origin, or motivation" to this bad faith action. I agree with that distinction, but for three reasons do not believe that it puts to rest the specter of the duty to amend suggested in *Salazar*.

First, in allowing the insurer to intervene, "the trial court directed Salazar to notify State Farm of its alleged [UIM] liability. Pursuant to this order, Salazar added claims against State Farm, for policy benefits under the UIM provisions." *Salazar, supra*, 148

P.3d at 279. The division then based the transactional analysis mandated by *Argus* on similarities between Salazar's "UIM benefits action" and her later bad faith action. But this analysis assumes the propriety of apparently ordering Salazar to add a UIM benefits claim against her insurer, merely because the insurer has intervened.

Second, under *Argus, supra,* claim preclusion encompasses claims that could have been decided, based on "all or any part of the transaction, or series of connected transactions, out of which the action arose." *Argus, supra,* 109 P.3d at 609 (quoting Restatement (Second) of Judgments § 24 (1982) ). In concluding that the bad faith action arose from the same transaction, the *Salazar* division made observations that could apply to underlying personal injury actions even if the insureds in such actions did not amend to plead a UIM benefits claim. For example:

> The facts of the accident would also be probative of [the insurer]'s reasonableness in tendering a settlement offer of only $100 [after it had agreed to a settlement of $25,000 with the underinsured motorist at fault].
>
> . . . .
>
> When Salazar was informed that State Farm refused to arbitrate the UIM benefits claim, she knew the facts necessary for bringing bad faith claims.

*Salazar, supra,* 148 P.3d at 281, 282.

Third, an insurer "may participate in the tort litigation against the uninsured motorist only to the extent necessary to protect its interest in a fair hearing on its legitimate defenses." *State Farm Mut. Auto. Ins. Co. v. Brekke,* 105 P.3d 177, 192 (Colo.2005). But the particulars of that role are determined on a case-by-case basis by balancing the parties' interests. *Clementi v. Nationwide Mut. Fire Ins. Co.,* 16 P.3d 223 (Colo.2001). Hence, I discern no categorical limitation on an intervenor-insurer's role that would per se preclude the insurer from later arguing that bad faith might have been decided in the underlying personal injury action.

Accordingly, I examine the interplay between claim preclusion and claims that ac-crue after the initial pleading in the underlying action has been filed.

## II. Law

Other than *Salazar,* no reported Colorado appellate case, in the insurance context or otherwise, addresses whether the bar against claims that "might have been decided" in an earlier case extends to claims which arose after the original pleading was filed in that case but were not pleaded. Such after-arising claims could have been included in the earlier case only by seeking leave to file a supplemental pleading under C.R.C.P. 15(d) (upon motion, court may permit service of a supplemental pleading "setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented").

According to all federal Circuit Courts of Appeal that have addressed this issue, the bar does not extend this far because claim preclusion is measured by claims that had accrued by the time of the original pleading in the earlier action. *See* 18 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 4409 (2d ed.2002) ("an action need include only the portions of the claim due at the time of commencing that action"); *see, e.g., Rawe v. Liberty Mut. Fire Ins. Co.,* 462 F.3d 521, 530 (6th Cir.2006) ("res judicata does not apply to claims that were not ripe at the time of the first suit"); *Mitchell v. City of Moore,* 218 F.3d 1190, 1202 (10th Cir.2000) ("claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed"); *Baker Group, L.C. v. Burlington N. & Santa Fe Ry. Co.,* 228 F.3d 883, 886 (8th Cir.2000) ("It is well settled that claim preclusion does not apply to claims that did not arise until *after* the first suit was filed.") (emphasis in original) (applying Kansas law); *Florida Power & Light Co. v. United States,* 198 F.3d 1358 (Fed.Cir.1999) (same); *Pleming v. Universal–Rundle Corp.,* 142 F.3d 1354 (11th Cir.1998) (same); *Computer Assocs. Int'l, Inc. v. Altai, Inc.,* 126 F.3d 365 (2d Cir.1997) (same); *S.E.C. v. First Jersey Sec., Inc.,* 101 F.3d 1450 (2d Cir.1996) (same); *Manning v. City of Auburn,* 953 F.2d 1355

(11th Cir.1992) (same) (applying Alabama law); *Los Angeles Branch NAACP v. Los Angeles Unified Sch. Dist.,* 750 F.2d 731, 739 (9th Cir.1984) (same) (applying California law).

The language of C.R.C.P. 15(d) is identical to the language of Fed.R.Civ.P. 15(d). Where the Colorado and Federal Rules of Civil Procedure are "essentially identical, case law interpreting the federal rule is persuasive in analysis of the Colorado rule." *Forbes v. Goldenhersh,* 899 P.2d 246, 249 (Colo.App.1994). And Colorado courts view federal claim preclusion jurisprudence as "essentially the same" as Colorado's approach to the issue. *Dalal v. Alliant Techsystems, Inc.,* 934 P.2d 830, 831 (Colo.App.1996).

Hence, I would adopt the reasoning of these cases and similarly hold that claim preclusion does not bar a plaintiff's cause of action based on events occurring after the initial complaint is filed, even though the plaintiff "could have amended her complaint to include ... ongoing alleged wrongdoings." *Rawe, supra,* 462 F.3d at 530; *see also Manning, supra,* 953 F.2d at 1360 ("Because res judicata creates no absolute duty to supplement a complaint, ... [plaintiff] had the choice of bringing her own independent action ...."); *Florida Power & Light Co., supra; Computer Assocs. Int'l, supra; First Jersey Securities, Inc., supra.*

This limitation recognizes that although a plaintiff may seek leave to file a supplemental pleading asserting a new claim based on events occurring after a lawsuit is commenced, the plaintiff is not required to do so. Under Fed.R.Civ.P. 15(d), "Upon motion ... the court may ... permit the party to serve a supplemental pleading setting forth transactions or occurrences or events which have happened since the date of the pleading sought to be supplemented." *See Pleming, supra,* 142 F.3d at 1357 (Fed.R.Civ.P. 15(d) makes a supplemental pleading optional and "the doctrine of *res judicata* does not punish a plaintiff for exercising the option not to supplement the pleadings with an after-acquired claim"); *see also Florida Power & Light Co., supra; Baker Group, L.C., supra.*

These principles have been applied to distinguish between bad faith claims arising precomplaint and postcomplaint in the underlying action. In *Rawe,* the Sixth Circuit held that the plaintiff's bad faith claims which had arisen before the complaint in the underlying action against the insurer for UIM benefits were barred by claim preclusion, but such claims that arose during the pendency of the underlying action were not.

*Porn v. National Grange Mut. Ins. Co.,* 93 F.3d 31 (1st Cir.1996), relied on by the division in *Salazar,* is not to the contrary. The court in Porn did not refer to a duty of the insured to amend in the underlying action. Rather, the court explained that even if *Porn* could not have foreseen National Grange's bad faith conduct during the underlying case when he brought that action, "we nevertheless conclude that Porn was aware of other conduct by National Grange sufficient to support a bad faith claim. Indeed, of the ten factual allegations supporting Porn's bad faith complaint, nine were known to Porn at the time he instituted the first action." *Porn, supra,* 93 F.3d at 38.

In my view, this issue was adequately preserved. While plaintiffs failed to assert that claim preclusion creates no duty to amend their original complaint in the personal injury action, they challenged claim preclusion both below and on appeal because State Farm's alleged bad faith occurred during, and even after, the personal injury action. They also raised the differences between State Farm's status as an intervenor in the personal injury action and as the defendant in this action, citing *Brekke, supra,* and arguing that State Farm had essentially sought only a declaratory judgment in the personal injury action.

Moreover, during oral argument State Farm asserted that C.R.C.P. 15 requires an insured to amend and plead bad faith in the underlying personal injury action or face claim preclusion in a later bad faith action, where the insurer's conduct during the personal injury action puts the insured on notice of a potential bad faith claim.

Accordingly, I would adopt the unanimous federal Circuit Court rule—a party need not file a supplemental pleading to reflect claims that arise after the first action has been filed

to avoid preclusion of such claims in later litigation.

### III.   Application

State Farm argues that its alleged bad faith conduct was known to the Camus before they brought the personal injury action. But they could not have pleaded a bad faith claim in their complaint in the personal injury action against the other driver because he was not in privity with State Farm. While the Camus could have named State Farm as a codefendant under C.R.C.P. 20(a), subject to a possible misjoinder motion under C.R.C.P. 21, State Farm does not present, nor have I found, any authority obligating them to do so or risk claim preclusion.

The complaint alleges bad faith actions of State Farm during the personal injury action, such as delaying consent to settlement with the other driver and improperly obtaining continuances. But the Camus could have raised a bad faith claim only by seeking leave to file a supplemental complaint under C.R.C.P. 15(d) after State Farm had intervened. Nevertheless, I recognize that *if* the Camus were required to amend their complaint in the personal injury action after State Farm intervened, their failure to add a bad faith claim might expose them to claim preclusion in this bad faith action.

To the extent that *Salazar* requires a plaintiff in a personal injury action whose insurer has intervened to seek leave to amend and plead bad faith claims or risk preclusion of such claims in a later action, I would not follow it. *See In re Estate of Becker*, 32 P.3d 557 (Colo.App.2000) (one division of the court of appeals is not bound by the decision of another division in a different case), *aff'd sub nom. In re Estate of DeWitt*, 54 P.3d 849 (Colo.2002). Instead, I would follow the federal Circuit Court decisions discussed above holding that the scope of claim preclusion is determined by the claims which had accrued as of the filing of the initial complaint, and that a plaintiff has no obligation to raise new claims arising thereafter by a supplemental pleading.

Accordingly, I would conclude that claim preclusion cannot bar this bad faith action on the basis that plaintiffs could have filed a supplemental pleading in the personal injury action asserting State Farm's bad faith.