23CA1945 In Interest of Acosta 12-26-2024

COLORADO COURT OF APPEALS

Court of Appeals No. 23CA1945
El Paso County District Court No. 19PR30166
Honorable Vincent N. Rahaman, Magistrate

In the Interest of Martin Diego Acosta, Ward.

Alisa Acosta,

Appellant,

v.

Raul Acosta, Guardian for Martin Diego Acosta,

Appellee.

ORDER REVERSED AND CASE
REMANDED WITH DIRECTIONS

Division IV
Opinion by JUDGE YUN
Harris and Kuhn, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 26, 2024

Leventhal Lewis Kuhn Taylor Swan PC, Michael D. Kuhn, Rabea Taylor, Andrew E. Swan, Colorado Springs, Colorado, for Appellant

Wade Ash, LLC, Jody J. Pilmer, Greenwood Village, Colorado, for Appellee

¶ 1　　　This case involves a dispute between two siblings, Alisa Acosta and Raul Acosta, over who is "best qualified" to serve as guardian for their adult brother, Martin Diego Acosta.[1]  § 15-14-310(3), C.R.S. 2024.  Alisa appeals the probate court's order appointing Raul as Martin's guardian and establishing a visitation schedule. We reverse and remand the case to the probate court for further findings regarding who is "best qualified" to serve as guardian.

## I.　　Background

¶ 2　　　Martin, who is in his mid-50s, is the second youngest of seven adult children of Sandra Acosta.  He is Autistic, and there is no dispute that he meets the criteria for the appointment of a guardian.

¶ 3　　　In November 2022, Alisa filed a petition seeking to have Sandra removed as Martin's guardian and herself appointed as successor guardian.  Alisa lives in Cody, Wyoming, while Martin and Sandra lived in Colorado Springs near Raul and his extended family.  Sandra opposed her removal and petitioned for Raul to be

---

[1] Due to the parties' shared last name, we refer to them by their first names.  We intend no disrespect by doing so.

appointed as co-guardian, citing her age (87) and the need for continuity in Martin's care.

¶ 4    The probate court held three evidentiary hearings. On September 10, 2023, ten days before the last hearing, Sandra passed away, necessitating the appointment of a successor guardian for Martin. The only two candidates were Raul and Alisa.

¶ 5    In an oral ruling, the probate court framed the issue as whether it would be in Martin's best interest to remain in Colorado or to move to Wyoming. For guidance, the court referred to section 14-10-129(2)(c), C.R.S. 2024, which outlines factors intended to help a court determine whether it is in a child's best interest to allow "[t]he party with whom the child resides a majority of the time" to relocate with the child. After considering the factors, the court found that, although Martin would "do just fine" with Alisa and "no doubt . . . make friends" in Wyoming, "[t]he safe answer [was] to say" that Martin would remain in Colorado where his existing community could support him as he grieved his mother's death. "My bottom line," the court stated, "is that Martin is going to remain in Colorado." Accordingly, the court appointed Raul as Martin's guardian and crafted a visitation schedule with which Raul

was ordered to comply.  The court subsequently issued a written order to that effect.

¶ 6      Alisa appealed.  On July 19, 2024, while the appeal was pending, the probate court issued an order removing Raul as guardian and appointing Amanda Banfield of Northstar Fiduciary, LLC, as temporary successor guardian, pending hearings scheduled for September 27 and 30, 2024.  We issued an order to show cause why the probate court had jurisdiction to modify the guardianship order, and if it did have jurisdiction, why the appeal was not moot.  On September 25, 2024, a new magistrate judge who had taken over the case issued an order ruling that the July order removing Raul as guardian had been entered erroneously without jurisdiction.  But "[e]rroneous or not," the court noted, "the outcome will be the same.  When the [July order] expires on September 27, the temporary substitute guardian will be relieved, and Raul Acosta's appointment as guardian will revert back, putting this case in the same posture it was in" when Alisa filed her appeal.  Accordingly, the court vacated the scheduled hearings.

¶ 7      We thus proceed to consider Alisa's appeal.

## II.    Analysis

¶ 8      Alisa contends that the probate court erred by appointing Raul as guardian because (1) it applied the wrong legal standard; (2) it failed to make a finding as to who was best qualified to serve as Martin's guardian; and (3) its decision was not supported by the evidence.  She also contends that the probate court erred by setting certain limits on video calls in the visitation order.  Because we agree that the probate court failed to make a finding as to who was best qualified to serve as Martin's guardian, we reverse and remand the case for the court to make the required finding.

### A.    Consideration of Child Relocation Factors

¶ 9      Alisa argues that the probate court applied the wrong legal standard by considering factors relevant to relocating a child in a case involving guardianship of an adult.  We are not persuaded.

### 1.    Standard of Review

¶ 10      We review a probate court's appointment of a guardian for an abuse of discretion. *Arguello v. Balsick*, 2019 COA 20M, ¶ 13.  "A court abuses its discretion if the appointment is manifestly arbitrary, unreasonable, or unfair, or if the court misconstrues or misapplies the law in entering the appointment order." *Id.*

4

¶ 11    "A determination of the proper legal standard to be applied in a case and the application of that standard to the particular facts of the case are questions of law that we review de novo."  *A.R. v. D.R.*, 2020 CO 10, ¶ 37.

### 2.    Law and Discussion

¶ 12    Section 15-14-310(3) provides that, "[w]ith respect to persons having equal priority" to be appointed as a guardian, "the court shall select the one it considers best qualified."  Section 15-14-314(1), C.R.S. 2024, in turn, outlines the responsibilities of a guardian, including the duty to "make decisions regarding the ward's support, care, education, health, and welfare," to "consider the expressed desires and personal values of the ward," and to act, "at all times, . . . in the ward's best interest."  Thus, when read together, these two statutes require the court to determine who is best qualified to fulfill those duties specified in section 15-14-314, including the duty to act, at all times, in the ward's best interest.

¶ 13    In deciding who should be appointed guardian, the court focused almost exclusively on whether it would be in Martin's best interest to remain in Colorado or to move to Wyoming.  To aid it in answering this question, the court considered eight factors set forth

in section 14-10-129(2)(c), adapting them as needed to apply to the

ward rather than a child.  As adapted, the factors were:

(1) "the reason why the party wishes to relocate the adult out

of state";

(2) "why the opposing party is objecting to the proposed

relocation";

(3) "the history and quality of each party's relationship with

the adult";

(4) "the educational and service opportunities . . . for the adult

at the existing location and the proposed new location";

(5) "the presence or absence of extended family at the existing

location and the proposed new location";

(6)  "any advantages of the adult remaining . . . in his current

community";

(7) "the anticipated impact of the move on the adult"; and

(8) "whether the [c]ourt will be able to fashion a reasonable

visitation schedule if Martin were to be allowed to move to

Wyoming."

The court discussed the evidence relevant to each factor and

concluded that, "given the death of his mother and what he's going

through," there were "compelling reasons for [Martin] to remain . . . in Colorado."

¶ 14    Alisa argues that the probate court applied the wrong legal standard by adapting factors designed to guide courts in a different context. Specifically, she argues that "the balance of the [child relocation] factors is derived from public policies underpinning *child* relocation decisions that are not coterminous with *adult* guardianship matters" and that the court's consideration of those factors "structurally taint[ed] its analysis." That said, she does not argue that the adapted factors were not relevant or useful in determining whether it would be in Martin's best interest to remain in Colorado or to move to Wyoming, or that any particular adapted factor led to improper considerations.

¶ 15    "District courts enjoy wide discretion when appointing a guardian." *Arguello*, ¶ 13. As the probate court noted and both parties acknowledge, the Colorado Uniform Guardianship and Protective Proceedings Act, §§ 15-14-101 to -434, C.R.S. 2024, does not provide factors to help the court determine whether it should permit the "relocation of adult individuals subject to guardianship cases." Rather, the court must consider the totality of the

7

circumstances.  Because the court thoughtfully adapted each child relocation factor to the circumstances of this case, and because Alisa does not contend that the court in fact considered anything it should not have, we cannot conclude that the court's use of the adapted factors was an abuse of its wide discretion.[2]

## B.    Lack of "Best Qualified" Finding

¶ 16    Next, Alisa contends that the probate court erred by failing to make a finding as to who was "best qualified" to serve as Martin's guardian.  § 15-14-310(3).  We agree.

## 1.    Standard of Review

¶ 17    We defer to the probate court's findings of fact if they are supported by the record, but we review its conclusions of law de novo.  *In re Parental Responsibilities Concerning B.J.*, 242 P.3d 1128, 1132 (Colo. 2010).  Whether the court's findings of fact are sufficient to support its conclusions of law is a legal question that

---

[2] We observe that nothing in the adult guardianship statute directs courts to consider the factors set forth in section 14-10-129(2)(c), C.R.S. 2024.  While courts should be cautious about borrowing factors from an unrelated statute, we see no abuse of discretion here because the court modified those factors to fit the circumstances of the case and those factors were relevant to determining the guardianship appointment.

we review de novo.  *People v. Buerge*, 240 P.3d 363, 367 (Colo. App. 2009).

## 2.   Law and Discussion

¶ 18    As noted above, when multiple individuals have equal priority to be appointed as a guardian, "the court shall select the one it considers best qualified." § 15-14-310(3).  It is undisputed that Alisa and Raul had equal priority to be appointed as Martin's guardian.  Thus, the ultimate question in this case was whether Alisa or Raul was best qualified to fulfill that role.

¶ 19    While a trial court's findings need not be exhaustive, the court must "enter findings on the material and ultimate facts of the case." *In Interest of Spohr*, 2019 COA 171, ¶ 24 (citation omitted).  "[T]he findings must be sufficient to allow the reviewing court to determine whether the decision is supported by competent evidence." *Id.* (citation omitted).

¶ 20    Here, the probate court found that, in light of his mother's recent death, it was in Martin's best interest to remain in Colorado.  "What's driving this decision," the court explained, "is the loss that Martin has recently suffered with regards to his mom" and the community and family support he has in Colorado.  Accordingly,

9

the court stated, "Raul . . . will be appointed as guardian." But the court did not make a finding that Raul was qualified to be Martin's guardian, much less that he was *best* qualified — that is, more qualified than Alisa. Indeed, the court did not address the question of whether Alisa or Raul was best qualified.

¶ 21    We are not persuaded otherwise by Raul's argument that, because a guardian "shall act in the ward's best interest," § 15-14-314(1), the court's finding that it was in Martin's best interest to remain in Colorado also constituted an implicit finding that Raul was best qualified to serve as Martin's guardian. Certainly, the advantages and disadvantages of a possible relocation may be relevant to the analysis of who was best qualified to be Martin's guardian. But a guardian has many responsibilities, including the duty to "make decisions regarding the ward's support, care, education, health, and welfare." *Id.* Absent a finding that Raul was best qualified to carry out these responsibilities, we are unable to determine whether the probate court's decision to appoint Raul as guardian was supported by competent evidence. *See Spohr*, ¶ 24.

## C. Remaining Contentions

¶ 22    Alisa further contends that, even if the probate court implicitly found that Raul was best qualified to be Martin's guardian, the evidence does not support the court's decision.  She also contends that the probate court erred by setting certain limits on video calls in the visitation order.  Because these contentions may not arise in the same way on remand, we need not address them.  *See Camus v. State Farm Mut. Auto. Ins. Co.*, 151 P.3d 678, 681-82 (Colo. App. 2006); *People v. Becker*, 2014 COA 36, ¶ 29 (declining to address issues that "involve facts specific to how the trial unfolded," as "we cannot predict that those facts will occur again or are even likely to occur again").

## III. Disposition

¶ 23    The order is reversed, and the case is remanded for the probate court to make an explicit finding as to who is "best qualified" to be Martin's guardian under section 15-14-310(3).  On remand, the court may consider events that have occurred in this case since this appeal was filed, and it may, in its discretion, take additional evidence.

JUDGE HARRIS and JUDGE KUHN concur.

11