**Lorien SALAZAR, Plaintiff–Appellant,**

**v.**

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellee.**

**No. 04CA2557.**

Colorado Court of Appeals, Div. III.

June 1, 2006.

As Modified on Denial of Rehearing Aug. 17, 2006.

Certiorari Denied Dec. 4, 2006.*

---

* Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24–51–1105, C.R.S.2005.

* Chief Justice MULLARKEY would grant as to the following issues:

Whether the court of appeals erred in holding that, unless claims for bad faith insurance conduct arising out of an underinsured motorist claim are brought at the same time, and in the same lawsuit, as a suit for the determination of underinsured motorist benefit, such claims for bad faith are otherwise barred by the doctrine of claim preclusion.

Whether the court of appeals erred in holding that claims for bad faith insurance conduct in an uninsured/underinsured motorist claim must be brought and tried, in the same case as the lawsuit for the determination of uninsured/underinsured motorist benefits regardless of the date of accrual of the claims foe bad faith insurance conduct.

Sears & Swanson, P.C., Victoria C. Swanson, Colorado Springs, Colorado, for Plaintiff–Appellant.

Cain & Hayter, LLP, Craig W. Cain, Colorado Springs, Colorado, for Defendant–Appellee.

FURMAN, J.

Lorien Salazar appeals the summary judgment dismissing her claims against State Farm Mutual Automobile Insurance Company. We affirm.

## I.

In 1999, Salazar was involved in an automobile accident when motorist Edward Ren rear-ended her vehicle. As a result of this accident, Salazar filed suit against Ren. Because her damages exceeded Ren's $25,000 automobile insurance policy limit, Salazar notified her insurer, State Farm, of a probable claim against the $50,000 underinsured motorist (UIM) provisions in her automobile insurance policy. State Farm subsequently moved to intervene in the suit against Ren, without objection from Salazar, "to resolve the common issues of fault and damages that have arisen under [Salazar's] claim for underinsured motorist benefits so that State Farm and [Salazar] can avoid re-litigating the same issue in an alternative forum." In its order granting State Farm's motion, the trial court directed Salazar to notify State Farm of its alleged liability. Pursuant to this order, Salazar added claims against State Farm, for policy benefits under the UIM provisions.

State Farm denied any obligation to Salazar, claiming that she had already been adequately compensated for her injuries. Accordingly, State Farm tendered an offer of settlement to Salazar in the amount of $100.

Meanwhile, Salazar settled the claim against Ren for $25,000, and the case against him was dismissed. However, Salazar proceeded to trial, claiming that State Farm's settlement offer under the UIM policy was too low, but she did not attempt to amend her complaint to allege bad faith against State Farm.

Because Salazar's policy with State Farm required a finding of legal liability on the part of Ren as a condition precedent to the payment of benefits, the jury was asked whether the 1999 automobile accident was a cause of Salazar's injuries. Following the trial, the jury returned a verdict in favor of Salazar in the amount of $402,971 in damages for physical impairment, lost income, future loss of income, medical expenses, and noneconomic losses. After reducing the jury's verdict to reflect Salazar's $50,000 UIM policy limit, and crediting the $25,000 already paid in settlement of the Ren case, the trial court entered judgment for Salazar in the amount of $25,000.

Eight months later, Salazar commenced this action against State Farm, alleging that State Farm's evaluation of her UIM claim constituted violations of the Unfair Claims Practices Act and bad faith breach of the insurance contract. State Farm then moved for summary judgment, arguing that the judgment in the first action precluded Salazar from bringing the second action. The trial court agreed, granting summary judgment in favor of State Farm on the grounds that (1) Colorado courts apply factors from the Restatement (Second) of Judgments in

res judicata analysis; (2) the facts underlying Salazar's breach of contract claims in the UIM benefits case and her bad faith breach of contract claims in the instant case were related in time, space, origin, or motivation and arose out of the same accident and the same failure to pay UIM benefits by the insurance company; and (3) Salazar's bad faith claims were barred by res judicata.

This appeal followed.

## II.

■ Salazar contends that the trial court erred in determining that the bad faith claims were barred by res judicata. We disagree.

### A. Standard of Review

■ Appellate review of summary judgment on the basis of res judicata is de novo. *Argus Real Estate, Inc. v. E–470 Pub. Highway Auth.*, 109 P.3d 604, 608 (Colo.2005). A reviewing court must determine whether "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." C.R.C.P. 56(c).

### B. Claim Preclusion Analysis

The parties and the trial court discuss the preclusive effect of the UIM benefits case as "res judicata." However, in *Argus, supra,* the supreme court clarified terminology used in res judicata analysis:

> This court uses the terms "claim preclusion" and "issue preclusion" rather than "res judicata" and "collateral estoppel." In prior opinions, we have used the phrases interchangeably, however, as noted by the United States Supreme Court ... use of the phrases "res judicata" and "collateral estoppel" can lead to confusion because "res judicata" is commonly used as an overarching label for both claim and issue preclusion.

*Argus, supra,* 109 P.3d at 608 (citations omitted).

Here, whether the UIM benefits case precluded Salazar from bringing bad faith claims

in the instant case requires claim preclusion analysis. The supreme court in *Argus* described claim preclusion as follows:

> Claim preclusion works to preclude the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not. The doctrine protects "litigants from the burden of relitigating an identical issue with the same party or his privy and ... promot[es] judicial economy by preventing needless litigation." For a claim in a second judicial proceeding to be precluded by a previous judgment, there must exist: (1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions.

*Argus, supra,* 109 P.3d at 608 (citations omitted; quoting *Lobato v. Taylor,* 70 P.3d 1152, 1165–66 (Colo.2003)).

#### 1. Elements (1), (2), and (4)

Here, the parties agree that the UIM benefits case is final; that the instant case involves the same subject matter, the 1999 accident, which gave rise to State Farm's refusal to pay benefits; and that the same parties are involved in both cases.

#### 2. Element (3)

The parties do not agree that the third element, identical claims for relief, was satisfied. Specifically, Salazar contends that the trial court erred in applying the "transactional approach" from Restatement § 24 in determining that this third element was satisfied. We disagree.

In *Argus,* the supreme court applied the transactional approach from Restatement § 24 in analyzing whether there existed identity of claims for relief, explaining:

> [T]he "same claim or cause of action requirement is bounded by the injury for which relief is demanded, and not by the legal theory on which the person asserting the claim relies." In addition, claim preclusion also bars a litigant from splitting claims into separate actions because once judgment is entered in an action it "extinguishes the plaintiff's claim ... inclu[ding]

all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose."

*Argus, supra,* 109 P.3d at 608–09 (quoting *Farmers High Line Canal & Reservoir Co. v. City of Golden,* 975 P.2d 189, 199 (Colo. 1999), and Restatement § 24); *see also Shaoul v. Goodyear Tire & Rubber, Inc.,* 815 P.2d 953, 955 (Colo.App.1990) (applying Restatement § 24 to hold that a plaintiff may not bring a state case previously litigated in federal court).

The meaning of "transaction" under this approach has not previously been addressed in a Colorado appellate opinion. However, that term has been clarified in *Porn v. National Grange Mutual Insurance Co.,* 93 F.3d 31 (1st Cir.1996).

In *Porn,* an insured who had previously sued his own insurer successfully for UIM benefits brought a second suit against the same insurer for mishandling his UIM claim. The district court granted summary judgment in favor of the insurer, inter alia, on the ground of claim preclusion, concluding that both of the insured's suits were based on the same transaction, namely, the insurer's obligation under its contract, and were thus barred by res judicata. The First Circuit Court of Appeals affirmed the district court, and clarified "transaction" under Restatement § 24:

> We determine what factual grouping constitutes a "transaction" pragmatically, giving weight to such factors as "whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations." These factors, however, are merely suggestive; they are not intended to be exhaustive, nor is any one factor determinative.

*Porn, supra,* 93 F.3d at 35 (quoting Restatement § 24).

### a. *Time, Space, Origin, or Motivation*

Here, the facts underlying Salazar's UIM benefits case and bad faith claims were related in time, space, origin, or motivation. In other words, all the claims arose out of the same transaction, sought redress for essentially the same basic wrong, and rested upon a similar factual basis.

First, both the bad faith claims and the UIM benefits claim derived from the same occurrence: State Farm's refusal to compensate Salazar more than $100 under Salazar's UIM policy for the 1999 accident.

Second, although the two claims presented different legal theories, one sounding in contract and the other in tort, they sought redress for essentially the same wrong. For example, Salazar's UIM benefits action sought to determine the amount of damages State Farm should pay under the policy, while her bad faith claims sought redress for State Farm's allegedly unreasonable refusal to pay the benefits.

Third, a comparison of the two complaints illustrates that both rested on a similar factual basis. In their factual allegations, both complaints outlined the circumstances of the accident, the particulars of the insurance policy, and State Farm's conduct in refusing to pay. Thus, the facts underlying the two claims were closely related in time, space, origin, and motivation. *See Porn, supra.*

Nevertheless, Salazar attempts to distinguish the bad faith action from the UIM benefits action. She maintains that the bad faith action did not accrue until the jury's finding that State Farm was legally obligated to Salazar, whereas the UIM benefits claim stemmed solely from the language of the policy. We are not persuaded.

The UIM benefits claim arose out of more than the language of the policy. It arose out of the accident and State Farm's refusal to pay. Indeed, had Salazar not been injured by Ren, no UIM benefits claim could exist. Also, State Farm's conduct in handling Salazar's insurance claim was not the only fact supporting her bad faith claims. The facts of the accident would also be probative of State Farm's reasonableness in tendering a settlement offer of only $100.

Accordingly, we reject Salazar's assertion that the two claims are so distinct that they must be brought as separate causes of action.

### b. *Convenient Trial Unit*

■ The next Restatement factor is whether the facts underlying the UIM benefits case and the bad faith claims form a convenient trial unit. Salazar contends it would not serve judicial economy to bring the claims together. She argues that a jury would have a difficult time evaluating all the claims and that combining the two actions would unnecessarily extend the length of the trial. We are not persuaded.

Salazar's bad faith claims would involve much of the same evidence as the UIM benefits claim. Thus, for the jury to hear these claims in the same action would have been convenient and efficient. Evidence surrounding the circumstances of the accident was relevant to both the UIM benefits claim and bad faith claims. To establish that State Farm breached the insurance policy in not paying her claim, Salazar had to prove that Ren caused the accident. Thus, in the UIM benefits claim Salazar presented evidence of the circumstances of the accident. This evidence would likely be repeated in a trial on the bad faith claims to show that State Farm had no reason for making such a low offer.

Evidence supporting the UIM benefits claim and the bad faith claims would also overlap regarding the terms of the UIM policy and State Farm's refusal to pay. To prove entitlement to UIM benefits, Salazar had to establish both that State Farm refused to pay her claim and also that the terms of the policy required payment. Similarly, the reasonableness of State Farm's refusal to pay more than its $100 settlement offer, in other words whether it acted in bad faith, depends, at least in part, on what the policy required. To address these matters, trial courts may choose to bifurcate the trials, allowing the evidence, common to both claims, to be presented at once and not in separate lawsuits commenced months or years later especially where, as happened here, the trial court previously granted an insurer's motion to intervene in the underlying tort case. *See Porn, supra,* 93 F.3d at 36.

### c. *Parties Expectations*

■ The final Restatement factor is whether treating the underlying facts as a trial unit conforms to the parties' expectations. We conclude that treating the evidence of the bad faith claims and the UIM benefits claim as a unit conformed to the parties' expectations.

When Salazar was informed that State Farm refused to arbitrate the UIM benefits claim, she knew the facts necessary for bringing bad faith claims. She knew that State Farm had refused to pay pursuant to the policy, and that the policy required her to proceed to trial to determine any damages to which she was entitled. Moreover, four months prior to trial, Salazar settled her claims against Ren for $25,000, yet State Farm offered Salazar only a $100 settlement to resolve her $50,000 UIM limit. Thus, it was reasonable to expect Salazar to amend her UIM benefits claim to include any bad faith claims.

For these reasons, we affirm the trial court's grant of summary judgment in favor of State Farm.

In light of the foregoing, we need not address Salazar's contention that the UIM benefits claim was not a breach of contract claim.

The judgment is affirmed.

Judge TAUBMAN and Judge GRAHAM concur.