COLORADO COURT OF APPEALS
 2016 COA 41
 
 

Court of Appeals No. 15CA0346
Larimer County District Court No. 14CV30917 
Honorable Julie Kunce Field, Judge

Scott E. Foster,

Plaintiff-Appellant,

v.

John E. Plock,

Defendant-Appellee. 

JUDGMENT AFFIRMED AND CASE
REMANDED WITH DIRECTIONS

Division VI

Opinion by CHIEF JUDGE LOEB 
Davidson* and Nieto*, JJ., concur

Announced March 10, 2016

 

Law Office of Michael L. Glaser, LLC, Michael L. Glaser, Denver, Colorado, for Plaintiff-Appellant

Montgomery Amatuzio Dusbabek Chase, LLP, Peter S. Dusbabek, Sara K. Stieben, Fort Collins, Colorado, for Defendant-Appellee

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and § 24-51-1105, C.R.S. 2015.

¶1        Plaintiff, Scott E. Foster, appeals the district court’s judgment dismissing his action against defendant, John E. Plock, pursuant to C.R.C.P. 12(b)(5). Foster argues that the court erred in ruling that his claims were barred both by issue and claim preclusion.[1] We conclude that the district court correctly dismissed Foster’s case as barred by claim preclusion. Accordingly, we do not consider the parties’ arguments regarding issue preclusion. We affirm the judgment and remand with directions.

I. Background and Procedural History

¶2        The origins of this case lie in Foster’s dissolution of marriage 
action and necessarily involve facts and rulings in that case as well as in related criminal and tort cases. Because the resolution of this appeal depends on matters in these proceedings, we recount the relevant facts from each of them. In so doing, we take judicial notice of the court filings in the cases referred to in Foster’s briefs (i.e., the domestic relations action, a county criminal court action against Foster, and a civil case in Larimer County), as well as the record on appeal in this case. Hanlen v. Gessler, 2014 CO 24, ¶23 n.10. We also take judicial notice of our own court records in the Foster v. Dean appeal. CRE 201(b); McGee v. Hardina, 140 P.3d 165, 167 (Colo. App. 2005).

¶3        Because we review this case on an order of dismissal under C.R.C.P. 12(b)(5), we must accept the facts in Foster’s pleadings as true. Kreft v. Adolph Coors Co., 170 P.3d 854, 857 (Colo. App. 2007).

¶4         Foster was a party in all of the relevant legal actions. Plock represented Foster’s wife (Wife) in the dissolution action, but he was not a named party in any of the cases related to this one. 

A. Dissolution of Marriage Action and the PREs

¶5         Wife filed to dissolve her marriage to Foster in 2011. In May 2012, the domestic relations court issued a temporary civil protection order barring Foster from contacting Wife.

¶6        As part of the dissolution action, the court ordered a Parental Responsibilities Evaluation (PRE) pursuant to section 14-10-127, C.R.S. 2015. Dr. Loizeaux, a mental health professional, was appointed to conduct the PRE in order to provide the court with information regarding Foster’s and Wife’s parenting capabilities.

¶7         As part of the PRE, Loizeaux’s assistant, Katie Kilian, investigated Foster’s criminal history. Kilian reported to Loizeaux that Foster had an extensive criminal history, and Loizeaux repeated that history in his PRE. The PRE also contained information related to Foster’s medical history.

¶8         In gathering data for his PRE, Loizeaux provided surveys to various persons who had knowledge of Foster’s parenting abilities. The responses to these surveys contained statements that were critical of Foster and suggested that he was unable to provide a good environment in which to raise a child.

¶9         Loizeaux also met with and observed Foster and conducted several mental health evaluations and personality assessments. Loizeaux’s conclusions regarding Foster’s mental health and parenting abilities were included in the PRE. The PRE was not in Foster’s favor and ultimately recommended that the court grant Wife sole decision-making authority for the minor child.

¶10        Foster was not satisfied with this report and requested that the court appoint a second evaluator, pursuant to section 14-10-127(1)(a)(I.5). The court did so. The second evaluator, Dr. Budd, noted in his PRE that it was questionable whether the crimes attributed to Foster in Loizeaux’s report had all been actually committed by Foster. However, Budd went on to make observations and conclusions similar to those in the Loizeaux PRE, and he made the same recommendation that the court award sole decision-making responsibilities to Wife. This PRE also contained Foster’s criminal, medical, and psychological histories.

¶11        The PREs were confidential and were not to be “made available for public inspection” without an order of the court. § 14-10-127(8). 

B. Criminal Proceedings Against Foster

¶12        Foster violated the domestic relations court’s temporary civil protection order multiple times. Two misdemeanor criminal cases arose from those violations.

¶13        In May 2013, the district attorney who prosecuted Foster in one of the cases contacted Plock. The prosecutor asked Plock whether he had any information that would be helpful to the criminal court in determining sentencing if Foster was convicted. Plock e-mailed the prosecutor both PREs without Foster’s knowledge or consent, and without a court order releasing the PREs.

¶14        As relevant here, one of the misdemeanor cases proceeded to a bench trial in county court, and Foster was found guilty on August 28, 2013, of violating the terms of the civil protection order. The prosecutor filed the PREs with the criminal court on September 17, 2013, for use in sentencing. The court held the sentencing hearing on September 19, 2013, and, on Foster’s motion, orally ordered the PREs sealed. The discussion regarding sealing the PREs occurred in open court.

¶15        In November 2013, Plock filed a motion with the domestic relations court admitting that he had disclosed the PREs to the prosecuting attorney in the criminal matter. In July 2014, the domestic relations court sanctioned Plock for violating section 14­10-127(8), and it ordered Plock to pay Foster’s attorney fees associated with responding to Plock’s November 2013 motion in which he admitted disclosing the PREs to the prosecutor.

C. Foster v. Dean

¶16        While both the dissolution of marriage action and the criminal the criminal case. The complaints named each defendant individually, including, complaints against Wife, Loizeaux, Kilian, and eight people who had provided statements to Loizeaux in the surveys regarding Foster’s demeanor and ability to parent. Plock was not named as a defendant in any of these complaints.

¶17        The Kilian and Loizeaux complaints generally alleged that Kilian provided inaccurate information to Loizeaux regarding Foster’s criminal background, that Loizeaux used this information in his PRE, and that Loizeaux failed to correct the PRE after learning that the criminal history was false. Foster alleged that Loizeaux and Kilian committed the torts of libel, slander, and outrageous conduct. He made similar claims against Wife and the other “witnesses” interviewed for Loizeaux’s PRE, alleging that the statements they made to Loizeaux were defamatory and constituted outrageous conduct.

¶18        The eleven separate cases were consolidated into one civil action, Foster v. Dean, 13CV123 (Dean).

¶19        The defendants each moved to dismiss the case in C.R.C.P. 12(b)(5) motions, asserting that the statements did not constitute defamation or defamation per se and did not rise to the level of
outrageous conduct. The defendants further argued that their statements were protected under the rule of absolute immunity in a judicial proceeding.

¶20        Foster then filed eleven amended complaints in January 2014. As significant here, the amended complaints against Wife and Loizeaux alleged that each had disclosed or caused the disclosure of both PREs to the prosecutor in Foster’s criminal case. Plock was not named as a defendant in any of the amended complaints. However, the complaint against Wife expressly alleged that she, through her attorney, caused the PREs to be disclosed to the prosecutor.[2] The amended complaints were filed nearly two months after Plock admitted in the dissolution action that he was responsible for disclosing the PREs to the prosecutor, and over one month after Foster had responded to that admission by requesting various sanctions against Plock.

¶21        The defendants subsequently filed renewed motions to dismiss regarding the amended complaints. In May 2014, the court issued an order granting the defendants’ motions to dismiss all of Foster’s complaints. The Dean court concluded:

 The witnesses who made the allegedly defamatory statements had absolute immunity from a defamation action because their statements were essential to the judicial decision-making process.
 
 The PREs were largely based on the evaluators’ observations, not the statements provided by the witnesses, and thus the defamation claims were without merit.[3]
 
 The statements made to Loizeaux and contained in his PRE did not rise to the level of outrageous conduct.
 
 The statements did not injure Foster or result in damages that would support the claims before the court.
 

¶22        Foster appealed this order but then voluntarily dismissed the appeal. This court granted Foster’s request for dismissal. Foster v. Dean, (Colo. App. No. 14CA1860, Dec. 19, 2014) (unpublished order).

D. Foster v. Plock

¶23        On September 15, 2014, four months after the Dean court dismissed that action, and ten months after Foster learned, by Plock’s own admission, that Plock disclosed the PREs to the prosecutor, Foster filed this action against Plock.

¶24        Foster alleged in his complaint that Plock committed the torts of invasion of privacy, defamation, and outrageous conduct. Specifically, Foster alleged that Plock disclosed the PREs to the prosecutor knowing that the PREs contained a false criminal history and Foster’s private medical and psychological information. As to each claim, he alleged:

 Invasion of privacy: “By intentionally providing the PREs to [the prosecutor] for use in the criminal trial, [Plock] initiated the process whereby the information contained in the PREs were [sic] publically disclosed.”
 Defamation: The false criminal history contained in Loizeaux’s PRE is defamatory per se and in publishing the PRE prepared by Loizeaux to the prosecutor, Plock acted “at least negligently.”
 Outrageous conduct: “By disclosing the PREs to [the prosecutor] with the intent that [the prosecutor] use these documents in connection with the criminal prosecution of [Foster], [Plock] engaged in extreme and outrageous conduct.”

¶25       Plock filed a motion to dismiss under C.R.C.P. 12(b)(5),
arguing that Foster was barred by claim and issue preclusion from pursuing this action because of the judgment of dismissal in Dean.

¶26        After full briefing on the motion, the court issued a written order granting Plock’s motion to dismiss, concluding that Foster’s action was barred by both claim and issue preclusion. In its order, the court correctly stated the elements for claim and issue preclusion, but then it made a series of findings and conclusions without specifying which findings applied to issue or claim preclusion. In that regard, the court made the following relevant conclusions:

 Foster was a party in both the Dean case and the divorce proceedings and, therefore, there existed identity of parties.
 The same issues were asserted in Dean as are asserted in this case as pertaining to the defamation and outrageous conduct claims.
 There was identity of subject matter in Dean and this case.
 The new claim of invasion of privacy was actually litigated and necessarily decided by the Dean court because that court determined that publication of the PREs did not rise to the level of outrageous conduct and did not cause emotional distress to Foster.

¶27        Foster now appeals the district court’s order of dismissal,
asserting that the court erred in concluding that his claims against Plock are barred by issue and claim preclusion. We conclude that the court correctly ruled that Foster’s claims are barred by claim preclusion and, thus, we do not consider his arguments relating to issue preclusion.

II. Standard of Review

¶28        We review de novo a dismissal under C.R.C.P. 12(b)(5) for failure to state a claim upon which relief can be granted, confining our review to the face of the complaint and accepting as true all facts alleged by the plaintiff and drawing all inferences in the plaintiff’s favor. See Kreft, 170 P.3d at 857. We review de novo a judgment entered on the basis of claim preclusion (also known as res judicata). Argus Real Estate, Inc. v. E-470 Pub. Highway Auth., 109 P.3d 604, 608 (Colo. 2005); Pomeroy v. Waitkus, 183 Colo. 344, 349, 517 P.2d 396, 399 (1973); Top Rail Ranch Estates, LLC v. Walker, 2014 COA 9, ¶55.

III. Claim Preclusion

¶29 Foster contends that the district court erred in concluding that his claims against Plock are barred by claim preclusion because there is no identity of subject matter, claims, or parties between the Dean case and the case before us. We disagree.

A. Applicable Law

¶30        Claim preclusion works to preclude the relitigation of matters that have already been decided as well as matters that could have been raised in a prior proceeding but were not. Argus, 109 P.3d at 608. The doctrine is intended to promote judicial economy and to “confirm the finality of judgments” by preventing inconsistent decisions. Top Rail, ¶56 (alteration in original) (quoting Argus, 109 P.3d at 608, 611).

¶31        For a claim in a second judicial proceeding to be precluded by a previous judgment, there must exist: “(1) finality of the first judgment, (2) identity of subject matter, (3) identity of claims for relief, and (4) identity or privity between parties to the actions.” Argus, 109 P.3d at 608 (citing Cruz v. Benine, 984 P.2d 1173, 1176 (Colo. 1999)).

B. Application

¶32        Although the district court set out the proper elements for both issue and claim preclusion, it is not clear from its order which of its findings apply specifically to claim preclusion. However, after reviewing the record and the complaints and orders in both Dean and this case, we conclude that all of the elements of claim preclusion have been met here, and that, accordingly, the court did not err in dismissing Foster’s claims based on that doctrine.

1. Finality of Judgment

¶33        Foster concedes, and we agree, that the order dated May 20, 2014, dismissing the Dean case is a final judgment. The first element of claim preclusion is therefore met.[4]

2. Identity of Subject Matter

¶34        Foster argues that the subject matter in Dean was not identical to the subject matter here because Plock was not a party to Dean and because his invasion of privacy claim encompasses a wholly different subject matter, i.e. privacy concerns, that was not alleged in Dean. To the extent his arguments are based on the elements of identity of parties and identity of claims, we address these elements in separate sections below.

¶35        Contrary to Foster’s argument, we conclude that there is identity of subject matter between Dean and this case because both cases involved the claimed impropriety of the disclosure of the same PREs to the prosecutor. The PREs at issue here are identical to those at issue in Dean, the alleged defamatory statements are the same because the PREs are the same, and the time period involved is the same. See, e.g., Argus, 109 P.3d at 608-09 (same parcel of land and same agreement as the prior litigation sufficient for identity of subject matter); City & Cty. of Denver v. Block 173 Assocs., 814 P.2d 824, 831 (Colo. 1991) (same land transaction and same underlying facts generate identity of subject matter); Camus v. State Farm Mut. Auto. Ins. Co., 151 P.3d 678, 680 (Colo. App. 2006) (same car accident at issue sufficient for identity of subject matter).

3. Identity of Claims for Relief

¶36        In determining whether there is identity of claims for relief, the
focus of the inquiry is “the injury for which relief is demanded, . . . not . . . the legal theory on which the person asserting the claim relies.” Jackson v. Am. Family Mut. Ins. Co., 258 P.3d 328, 331 (Colo. App. 2011) (citation omitted). Thus, claim preclusion bars litigation of claims that previously were or might have been decided only “if the claims are tied by the same injury.” Loveland Essential Grp. v. Grommon Farms, Inc., 2012 COA 22, ¶15 (citation omitted).

¶37        “Claims are tied by the same injury where they concern ‘all or any part of the transaction, or series of connected transactions, out of which the [original] action arose.’” Id. (alteration in original) (quoting Argus, 109 P.3d at 609). In determining what factual grouping constitutes a transaction, the court considers “whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties’ expectations.” Id. (quoting Salazar v. State Farm Mut. Auto. Ins. Co., 148 P.3d 278, 281 (Colo. App. 2006)). These factors are merely suggestive and are not intended to be exhaustive; nor is any one factor determinative. Salazar, 148 P.3d at 281.

¶38        Claims are related in time, space, origin, or motivation when “all the claims arose out of the same transaction, sought redress for essentially the same basic wrong, and rested upon a similar factual basis.” Id. Similarly, claims would form a convenient trial unit when they would involve much the same evidence and therefore it would have been convenient and efficient for the jury to hear the claims in the same action. See id. at 282.

¶39        Generally, a contract or agreement is considered to denote a single transaction for the purpose of claim preclusion and, therefore, claims for different breaches of the same contract ordinarily must be brought in the same action unless the claim arose after the first judgment. Loveland Essential Grp., ¶16. Although the PREs are not a contract or agreement, these same documents are at the heart of both cases and, in our view, all claims arising from the PREs and their disclosure to the prosecutor should have been brought in the same action because none of the claims asserted by Foster here arose after the final judgment in Dean.

¶40        In Foster’s complaint in this action, he alleged three claims for
relief: invasion of privacy, defamation, and outrageous conduct. He alleged defamation and outrageous conduct claims in Dean, but he did not raise an invasion of privacy claim. Thus, we consider the defamation and outrageous conduct claims together and then address the invasion of privacy claim.

a. Defamation and Outrageous Conduct

¶41        Foster alleged that Plock committed defamation by publishing false and defamatory statements regarding Foster’s criminal history in the Loizeaux PRE to a third party (i.e. the prosecutor). Foster alleged he suffered economic and emotional injury resulting from the publication of the Loizeaux PRE to the prosecutor.[5] Foster made identical injury claims in various complaints in Dean. Moreover, the allegation here is based upon the disclosure and publication of the PRE to the prosecutor, which was the same conduct and injury alleged in the amended complaints against both Wife and Loizeaux in Dean.

¶42        We therefore conclude that the allegations of defamation here and in Dean are related in time, space, and origin because both arose out of the same PRE, sought redress for the same wrong, and rested upon the same factual basis — disclosure to the prosecutor. See Salazar, 148 P.3d at 281. These claims would also have formed a convenient trial unit because the allegations that Wife (through her attorney) and Loizeaux disclosed the PREs to the prosecutor would have involved essentially the same evidence as the allegations against Plock here. Id. at 282. Lastly, it would have conformed to the parties’ expectations to have the Plock defamation claim asserted in Dean because when Foster alleged that Wife and Loizeaux disclosed the PRE to the prosecutor in the amended complaint in Dean, Foster knew that it was Plock who had disclosed the PRE, and he had already requested sanctions against Plock for doing so. It was therefore reasonable to expect Foster to amend his complaints to include any claims he had against Plock. See id.

¶43        Similarly, the claim for outrageous conduct against Plock alleged that in disclosing the PREs to the prosecutor, Plock committed outrageous conduct. The outrageous conduct claims in Dean are again related in time, space, and origin because they arise from the same PREs. And, again, the claims would have involved much of the same evidence because Foster would have presented evidence of Plock’s disclosure in the Dean trial. Foster knew the PREs had been disclosed to the prosecutor at the latest on September 17, 2013, when they were filed by the prosecutor in preparation for Foster’s sentencing hearing. Foster also knew that Plock had disclosed the PREs because Plock admitted to that fact in November 2013. Nevertheless, Foster did not name Plock as a defendant in any of the amended complaints he filed in Dean in January 2014. Instead, he amended the complaints against Loizeaux and Wife to allege that they disclosed the PREs; indeed, the amended complaint against Wife expressly alleged that she did so “through her attorney.” The outrageous conduct claim asserted here was, therefore, both a convenient trial unit for the Dean case, and asserting it in Dean would have conformed to the parties’ expectations. This claim could and should have been brought in Dean.

b. Invasion of Privacy

¶44        Foster alleged that Plock committed the tort of invasion of privacy by disclosing the PREs to the prosecutor with knowledge that the PREs contained private information such as Foster’s medical and psychological history. Foster alleged that in making this disclosure, Plock “initiated the process” whereby Foster’s personal information was publically disclosed in the county court records and during open court at the sentencing hearing.

¶45        Thus, the injury alleged for the invasion of privacy claim is that private statements about Foster were made public and the publication of these statements harmed him. This publication is the same injury alleged in Dean for the defamation and outrageous conduct claims. Moreover, as previously discussed, this is a claim that could have been brought as early as November 26, 2013, when Plock admitted to disclosing the PREs to the prosecutor, but Foster failed to bring this claim in his amended complaints in January 2014 or to make any request or motion to add Plock as an additional defendant. The fact that invasion of privacy was not, in name, one of the claims made in Dean is irrelevant because the injury is the same. Jackson, 258 P.3d at 331; Camus, 151 P.3d at 680. This claim also could and should have been brought in the Dean case.

¶46        The invasion of privacy claim is related in time, space, and origin to the claims in Dean and would have been a convenient trial unit because the same evidence would have been presented for all claims, i.e. the alleged private, defamatory, and outrageous statements and evidence that those statements caused Foster unspecified economic and noneconomic harm once disclosed and published. Because the evidence necessary to prove the invasion of privacy claim would not have been appreciably different from the evidence necessary to prove the other claims in Dean, and because that claim arose from the same statements in the same PREs, it would have been reasonable for Foster to have brought the invasion of privacy claim in the Dean case.

¶47        In sum, we conclude that the identity of claims element of claim preclusion is satisfied here.

4. Identity of Parties

¶48        The identity of parties element appears to be the main issue disputed by Foster on appeal. Foster spends a significant portion of his briefs arguing that because Plock was not a named party or in privity with any party in Dean, there is no identity of subject matter or parties for purposes of claim preclusion. In response, Plock argues that he did not need to be a defendant in both actions for him to prevail on his defensive use of claim preclusion because Foster was bound by the judgment in Dean and because the mutuality requirement (the requirement that all parties in both actions be identical or in privity with one another) has been abolished in Colorado. For the reasons below, we agree with Plock.

¶49        At least three divisions of this court, in considering cases involving the defensive use of claim preclusion, have held that, as a matter of law, there is no mutuality requirement. In Murphy v. Northern Colorado Grain Co., 30 Colo. App. 21, 23, 488 P.2d 103, 104 (1971), a division of this court rejected the mutuality requirement in such a case, holding that “it is not required that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation which finally determined the identical issue sought to be relitigated.” In so doing, the division relied on the rationale in Bernhard v. Bank of America National Trust & Savings Association, 122 P.2d 892 (Cal. 1942). In pertinent part, Bernhard states:

The criteria for determining who may assert a plea of res judicata differ fundamentally from the criteria for determining against whom a plea of res judicata may be asserted. The requirements of due process of law forbid the assertion of a plea of res judicata against a party unless he was bound by the earlier litigation in which the matter was decided. He is bound by that litigation only if he has been a party thereto or in privity with a party thereto. There is no compelling reason, however, for requiring that the party asserting the plea of res judicata must have been a party, or in privity with a party, to the earlier litigation.

No satisfactory rationalization has been advanced for the requirement of mutuality. Just why a party who was not bound by a previous action should be precluded from asserting it as res judicata against a party who was bound by it is difficult to comprehend. 

Many courts have abandoned the requirement of mutuality and confined the requirement of privity to the party against whom the plea of res judicata is asserted.

122 P.2d at 894-95 (emphasis added) (citations omitted).

¶50        In McGary v. Rocky Ford National Bank, 523 P.2d 479, 480-81 (Colo. App. 1974) (not published pursuant to C.A.R. 35(f)), a Murphy that mutuality is not required.

¶51        Finally, in 1990, a division of this court concluded that the
trial court properly found identity of parties in a claim preclusion case where a defendant in the subsequent action sought to use the doctrine defensively against a plaintiff who was bound by a prior judgment even though the defendant was not a party to, or in privity with, any party in the prior action. Shaoul v. Goodyear Tire & Rubber, Inc., 815 P.2d 953, 954-55 (Colo. App. 1990). In that case, the plaintiff filed suit against Goodyear and a man named Schossler (among others) in state court. Id. at 954. Then, the plaintiff filed a suit against Goodyear in federal court. Id. The federal court dismissed the plaintiff’s claims against Goodyear with prejudice. Id. In the state court, Goodyear and Schossler moved for summary judgment based on claim preclusion. Id. The state district court agreed and dismissed all but one of the claims on claim preclusion grounds. Id. On appeal, a division this court, relying on Murphy, held that “Schossler’s presence in state court did not defeat the ‘identity of parties’ requirement” of claim preclusion. Id. at 954-55.

¶52        We also find it instructive that the United States Supreme Court has found the reasoning in Bernhard persuasive and, in analogous issue preclusion cases, has abolished the concept of mutuality for purposes of defensive use of that doctrine. In Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation, 402 U.S. 313, 324 (1971), the Court noted that Bernhard has had “significant impact,” that its reasoning was persuasive, and that “[m]any state and federal courts rejected the mutuality requirement, especially where the prior judgment was invoked defensively in a second action against a plaintiff bringing suit on an issue he litigated and lost as plaintiff in a prior action.”

¶53        In Parklane Hosiery Co. v. Shore, 439 U.S. 322, 328-29 (1979),
the Court further expanded the holding in Blonder-Tongue by examining the difference between defensive and offensive use of issue preclusion. Defensive use is when a defendant uses issue preclusion against a plaintiff who has previously litigated the same issues and lost, as Plock sought to do here with both claim and issue preclusion. Id. Defensive use of these doctrines promotes judicial economy. Id.

¶54        In Parklane, the Court relied on the rationale of Bernhard and Blonder-Tongue. Id. at 328 n.8; see Blonder-Tongue, 402 U.S. at 320-27. The Court particularly emphasized the rationale that no satisfactory rationalization had been advanced for the requirement of mutuality and that one of the reasons for abolishing mutuality for defensive use of issue preclusion was that it would “preclude a plaintiff from relitigating identical issues by merely ‘switching adversaries.’” Parklane, 439 U.S. at 328 n.8, 329 (quoting Bernhard, 122 P.2d at 895).

¶55        We are similarly persuaded by the reasoning in Bernhard and Murphy (as followed by the divisions in McGary and Shaoul), and we perceive no reason why a party defensively asserting claim preclusion must have been a party to the prior action when the party against whom he or she is asserting the doctrine is bound by the prior judgment. Blonder-Tongue emphasized that the mutuality requirement has been rejected in many state and federal courts especially where the prior judgment is used defensively in a second action against a plaintiff on matters that the plaintiff litigated and lost in a prior action. 402 U.S. at 324. This is exactly the situation here. We discern no reason why defensive use of claim preclusion would be any different from defensive use of issue preclusion, and Foster offers none. And, as noted previously, divisions of this court have persuasively so held. Moreover, to allow otherwise would mean that Foster would have multiple bites at the apple for the same injury based on his decision to “switch adversaries.” Parklane, 439 U.S. at 329 (quoting Bernhard, 122 P.2d at 895). This hardly promotes judicial economy. See also Weddell v. Sharp, 350 P.3d 80, 81, 83-85 (Nev. 2015) (adopting the doctrine of nonmutual defensive claim preclusion because “the privity requirement can be unnecessarily restrictive in terms of governing when the defense of claim preclusion may be validly asserted”).

¶56        Thus, because Foster was a party to both Dean and the dissolution case, we conclude that the requisite identity of parties exists for purposes of claim preclusion.

¶57        We reject Foster’s argument that Murphy and McGary are actually issue preclusion cases because the divisions in those cases used the words “estoppel” and “estopped” in their opinions. To the contrary, the divisions in those cases clearly and expressly stated that their holdings were based on the doctrine of claim preclusion (there referred to as res judicata).

¶58        We also disagree with Foster’s argument that the division in Shaoul concluded that the parties were the same in both the federal and state court cases at issue there. Foster simply misreads the facts in Shaoul. There, Schossler was not a party to the federal action, but he was a party to the state action. Shaoul, 815 P.2d at 954 (stating that “plaintiff filed a complaint against Goodyear in the United States District Court for Colorado”; “plaintiff named Goodyear and four individuals as defendants in the state action, only Schossler remained a party to the suit at the time of judgment”; “[i]n the state court, Goodyear and Schossler then moved for summary judgment” on res judicata grounds). The division there found that Schossler’s presence in the state action — but not the federal action — did not defeat the identity of parties requirement for claim preclusion. Id. at 954-55. Further, and consistent with our reading of Murphy as a claim preclusion case, Shaoul cited and relied on Murphy for its conclusion regarding the identity of parties element in claim preclusion cases. Id.

¶59        Lastly, we also reject Foster’s reliance on Pomeroy and Cruz for the proposition that mutuality of defendants is still required to establish identity of parties for defensive use of claim preclusion. Pomeroy is an issue preclusion case in which the supreme court held that the elements of identity of issues and whether the defendant had had a full and fair opportunity to litigate the issues in the prior case had not been satisfied. Thus, Pomeroy did not consider the identity of parties element of claim preclusion at all in its holding. Pomeroy’s citation to a Restatement of Judgments from 1942 on the need for identity of parties is dicta at best, and, as Blonder-Tongue noted, the doctrine of mutuality came under fire as soon as it was created and “certainly by the time the Restatement was published.” Blonder-Tongue, 402 U.S. at 322.

¶60        Cruz is also distinguishable. There, the supreme court considered claim preclusion in the context of a settlement agreement with some, but not all, of the named defendants. Cruz, 984 P.2d at 1173. The Cruz court concluded that claim preclusion did not bar the plaintiff from seeking judgments against other defendants who were joint tortfeasors with the defendants with whom they had settled. Id. at 1181. The court came to its conclusion by analyzing partnership law and the Uniform Contribution Among Tortfeasors Act, and finding that there was “no indication that the settlement was intended to release the [remaining defendants] in the instant case from liability.” Id. at 1179. That case simply has no bearing on, and is not analogous to, the situation here where there is no settlement agreement and there is no issue whether multiple defendants are joint tortfeasors.

¶61        Because we conclude that, on the record here, all of the elements of claim preclusion have been met, we further conclude that the district court did not err in dismissing Foster’s claims against Plock.

IV. Attorney Fees on Appeal

¶62        Both Foster and Plock request attorney fees incurred on appeal. We deal with each request in turn.

¶63        Foster argues that he is entitled to attorney fees pursuant to C.A.R. 39.5. We deny his request for two reasons. First, his opening brief does not state any legal basis for his request as required by C.A.R. 39.5. C.A.R. 39.5 (“[T]he party claiming attorney fees shall specifically request them, and state the legal basis therefor, in the party’s principal brief in the appellate court.”); In reMarriage of Wells, 252 P.3d 1212, 1216 (Colo. App. 2011) (denying request for attorney fees where no legal basis for recovery was given). Second, because Foster has not prevailed on appeal, he is not entitled to attorney fees for bringing the appeal. C.A.R. 39.5. 

¶64        Plock asserts that he is entitled to a mandatory award of attorney fees and costs on appeal under sections 13-17-201 and 13-16-113(2), C.R.S. 2015. Section 13-17-201 provides that

[i]n all actions brought as a result of a death or an injury to person or property occasioned by the tort of any other person, where any such action is dismissed on motion of the defendant prior to trial under rule 12(b) of the Colorado rules of civil procedure, such defendant shall have judgment for his reasonable attorney fees in defending the action.

A party who successfully defends such a dismissal order is also entitled to recover reasonable attorney fees incurred on appeal. Loveland v. St. Vrain Valley Sch. Dist. RE-1J, 2015 COA 138,

¶27. Because we affirm the trial court’s order of dismissal under C.R.C.P. 12(b)(5), Plock is entitled to his reasonable attorney fees incurred on appeal. Pursuant to C.A.R. 39.5, we exercise our discretion and remand to the district court to determine the amount of reasonable attorney fees to be awarded to Plock.

V. Conclusion 

¶65        The judgment is affirmed, and the case is remanded to the district court for a determination of Plock’s reasonable attorney fees incurred on appeal.

JUDGE DAVIDSON and JUDGE NIETO concur.

[1] Foster does not appeal the district court’s decision not to convert Plock’s motion to dismiss to a motion for summary judgment.

[2] The amended complaint against Wife did not mention Plock by name. However, the certificate of service shows that Plock was served with the amended complaint as Wife’s attorney.

[3] We take this finding to mean that Foster suffered no injury.

[4] Although Foster appealed the dismissal order in Dean, he voluntarily dismissed that appeal, and therefore, the order dated May 20, 2014, stands as the final judgment. We also note that Foster filed the notice of appeal in Dean on September 24, 2014, which was considerably beyond the forty-nine-day limitation of C.A.R. 4. Thus, the appeal, even if not voluntarily dismissed, would have been untimely as to any arguments relating to the May 20 dismissal order.

[5] Foster never alleged that the publication of the PREs in Dean played any role in his criminal sentencing.